# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JACK BROWN and JACK BROWN BUICK, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 06 C 3339 |
| | ) | |
| NEW YORK LIFE INSURANCE CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment. For the reasons stated below, we grant Defendants' motion for summary judgment in its entirety.

## BACKGROUND

Plaintiffs Jack G. Brown ("Brown") and Jack Brown Buick, Inc. ("JBB")

allege that they purchased insurance policies ("Policies") from Defendant New York Life Insurance Co. ("NYL").  According to Plaintiffs, in the early 1980's, Defendant Curtis Schultz ("Schultz"), who was NYL's agent, met with Brown and another JBB employee and made a business presentation referred to as the Premium Offset Proposal ("POP").  Schultz allegedly indicated that, by taking advantage of the POP, the new policies would have greater death benefits, cash values, and surrender values and Plaintiffs would not ultimately be required to make premium payments. According to Plaintiffs, Schultz made misrepresentations concerning how the POP Program operated and also regarding the benefits that Plaintiffs would receive by following the POP.  Plaintiffs allegedly purchased policies from Schultz and the results were not as Schultz had allegedly forecasted.  Plaintiffs allegedly continued to pay premiums after the time periods that Schultz indicated premiums would not have to be paid.  Plaintiffs contend that they were misled by the advice of Schultz concerning the operation of and risks associated with the POP.  As a result of Schultz's alleged misrepresentations, Plaintiffs claim that there are substantial loans that have been taken against the Policies, the Policies have little cash value, and the Policies have little value at the death of an insured after the payment of outstanding loans.  Plaintiffs also allege that Schultz was trained by NYL to mislead NYL customers in order to lure customers into following the POP and that the alleged scheme began in the early 1980's.

Plaintiffs brought the instant action and include in the amended complaint a

breach of contract claim (Count I), a fraud claim (Count II), a negligent

misrepresentation claim (Count III), a claim alleging a violation of the Illinois

Consumer Fraud and Deceptive Business Practices Act ("Fraud Act"), 815 ILCS

505/1 *et seq.* (Count IV), and an unjust enrichment and constructive trust claim

(Count V).  NYL now moves for summary judgment and Schultz joins in NYL's

motion.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most

favorable to the non-moving party, reveals that there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c).  In seeking a grant of summary judgment, the moving party must

identify "those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate

the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).  This initial burden may be satisfied

by presenting specific evidence on a particular issue or by pointing out "an absence

of evidence to support the non-moving party's case."  *Id.* at 325.  Once the movant

has met this burden, the non-moving party cannot simply rest on the allegations in

the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set

forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P.

56(e).  A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);  *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).  The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Defendants argue that Plaintiffs' claims are barred by the applicable statute of limitations.  Defendants also argue that Plaintiffs are barred from bringing the instant action because they were members of a class in a prior action in which the court approved a class action settlement.

## I.  Statute of Limitations

Defendants argue that Plaintiffs' claims are barred by the statute of limitations periods.  Under Illinois law, a breach of contract claim premised upon the breach of a written contract must be brought within 10 years.  735 ILCS 5/13-206; *F.D.I.C. v.*

*Wabick*, 335 F.3d 620, 627 (7th Cir. 2003). The statute of limitations for a Fraud Act claim is 3 years. 815 ILCS 505/10a(e). Under Illinois law, fraud claims, negligent misrepresentation claims, and breach of contract claims based upon oral contracts such as the ones brought in this case must be brought within 5 years. 735 ILCS 5/13-205; *Horbach v. Kaczmarek*, 288 F.3d 969, 973 (7th Cir. 2002)(stating that fraud claim had 5 years statute of limitations period)*; Burns Philp Food, Inc. v. Cavalea Continental Freight, Inc.*, 135 F.3d 526, 527 (7th Cir. 1998)(stating that an unjust enrichment claim premised on an unwritten contract has a 5 year statute of limitations); *Credit General Ins. Co. v. Midwest Indem. Corp.*, 916 F.Supp. 766, 774 (N.D. Ill. 1996)(stating that negligent misrepresentation claim is governed by 5 year statute of limitations period); *Frederickson v. Blumenthal*, 648 N.E.2d 1060, 1063 (Ill. App. Ct. 1995)(stating statute of limitations for unjust enrichment claims).

Plaintiffs do not dispute that the above statute of limitations periods apply to their claims. (Ans. SJ 3); (Ans. SJ Mem. 3-5). Plaintiffs instead argue that their claims are timely because the statute of limitations periods were tolled until 2005 due to the discovery rule. (Ans. SJ 3); (Ans. SJ Mem. 3-5). Generally, under Illinois law, a cause of action accrues and the statute of limitations period begins to run when a plaintiff is injured. *Hollander v. Brown*, 457 F.3d 688, 692 (7th Cir. 2006); *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 444 (7th Cir. 2005). However, Illinois follows the discovery rule, which provides that the running of a statute of limitations will be tolled "until the plaintiff knows or reasonably should

know that he has been injured and that his injury was wrongfully caused." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630-31 (Ill. 1994); *Rodrigue*, 406 F.3d at 444 (stating that "[l]ike the continuing violation rule, the discovery rule is an equitable exception to the ordinary rule that the statute of limitations begins to run with the accrual of the cause of action"); *Burns Philp Food, Inc.*, 135 F.3d at 528 (stating that "in Illinois, as in most states, the period begins not with the injury's actual discovery, but when the injury could have been discovered through the exercise of appropriate diligence").

In the instant action, Plaintiffs contend that they were misled by Defendants into believing that "they could purchase substantial amounts of life insurance with premiums to be paid over a seven (7) year period (approximately)," and that Plaintiffs "were led to believe that after said seven (7) year period, the policies would be paid in full and no further premiums would be required. . . ." (Ans. SJ 2); (R SF Par. 15-16). The Policies at issue in this action were issued as early as in 1963 and others in 1978, 1983 and 1986. (R SF Par. 14). Plaintiffs also allege generally that Schultz misled Plaintiffs as to how the POP operated and as to the risks associated with the POP. (A. Compl. Par. 11-15).

A. Receipt of Premium Notices

Defendants contend that Plaintiffs had notice of their alleged injury and the alleged wrongs done by Defendants when Plaintiffs continued to receive premium

notices more than seven years after the Policies were issued.  Defendants assert in paragraph 40 of their statement of material facts ("Paragraph 40") that "[e]ach year, Plaintiffs received annual premium notices and anniversary notices for each policy each year after the policies were issued," and that "Plaintiffs continued receiving premium notices on their policies more than seven years after each was issued."  (SF Par. 40).  Plaintiffs respond to Paragraph 40 by stating merely that "[t]he documents speak for themselves."  (R SF Par. 40).  Plaintiffs fail, however, to either affirm or deny whether they continued to receive premium notices more than seven years after each policy was issued.  Since Plaintiffs have failed to deny the truth of the facts included in Paragraph 40, the facts are deemed undisputed pursuant to Local Rule 56.1.  Local Rule 56.1; *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003)(stating that any facts included in a party's statement of facts that are not properly denied by the opposing party are deemed to be undisputed); *Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1).  Plaintiffs themselves indicate that, sometime in 1977, "Schultz all but guaranteed that dividends would exceed projections" and that "the premium payments would terminate after a period of approximately 7 years."  (R SF Par 15).  Therefore, contrary to Schultz's alleged promises of "all but guaranteed" results, it is deemed undisputed that on the eighth year after the Policies were issued Plaintiffs continued to receive premium notices. (R SF Par. 15).  Thus, considering the Policies that were first sold by Schultz as part

of the alleged scheme in 1983, Plaintiffs began receiving premium notices in 1991 that were inconsistent with Schultz's alleged assertion that no further premium payments would be required after seven years.

### B.  Reliance on Advice by Schultz

Plaintiffs argue that even if they continued to receive premium notices more than seven years after the policies were issued, "[d]ue to the continued reliance upon the advice of" Schultz, they had no reason to suspect Defendants' wrongdoing "until significant premiums had to be paid (approximately 2005 and after)."  (Ans. SJ. Mem. 4).  Plaintiffs also state vaguely that "Defendant's representations were/are continuous and ongoing through the present time. . . ."  (Ans. SJ Mem. 4).  We note that Defendants previously filed a motion to dismiss in this case and presented a similar statute of limitations argument.  We denied the motion to dismiss because Defendants' arguments were premature at the motion to dismiss stage.  (10/17/07 MO 7).  We pointed out that Plaintiffs alleged in their amended complaint that after Plaintiffs received unexpected premium notices, Schultz advised them to continue to pay the premiums.  (10/17/07 MO 8).  Although at the summary judgment stage reasonable inferences must be made in Plaintiffs' favor, Plaintiffs' allegations are not accepted on their face as true as in the motion to dismiss stage, and Plaintiffs can no longer rely upon allegations in their amended complaint.  Fed. R. Civ. P. 56(e). Plaintiffs must point to sufficient evidence to support their case.  *Id.*

Plaintiffs fail to point to sufficient evidence in their answer to the motion for summary judgment or in the document they have entitled as their "Memorandum in Support." (Ans. SJ Mem. 1). Instead of referring to sufficient evidence to support their position, Plaintiffs mainly provide conclusory allegations without supporting citations regarding Schultz's alleged deception and continued advice, which led Plaintiffs to continue to pay the premiums. (Ans. SJ 1-3); (Ans. SJ Mem. 4); *See Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)(stating that "summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events'")(quoting in part *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005)); *Greer v. Board of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001)(stating that a court is not required to "scour the record" and that "a lawsuit is not a game of hunt the peanut")(quoting in part *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994)).

Plaintiffs also assert that they realized the alleged deception only when they were required to make substantial out of pocket payments after 2005. (Ans. SJ Mem. 4). However, Plaintiffs fail to explain why they did not realize the alleged deception or should not have reasonably realized sooner. Considering the fact that the first policies that were part of the alleged scheme were issued in 1983, Plaintiffs should have been aware of the deception in the early 1990's. Plaintiffs fail to offer any specific facts concerning the alleged deception by Schultz, instead offering only

conclusory statements that Plaintiffs were forced to pay premiums "which they were led to believe would never occur," and "Plaintiffs were led to believe by . . . Schultz that the course of action recommended by . . . Schultz would allow for the payment of premiums without substantial cash outlays." (Ans. SJ Mem. 3). Plaintiffs also offer, without any supporting reference to the record or explanation that "Plaintiff's recognition of their predicament was delayed" "[d]ue to the continued reliance upon the advice by Curtis Schultz." (Ans. SJ Mem. 4).

Plaintiffs began receiving evidence of Defendants' alleged deception when they received unexpected notices requesting premium payments and yet Plaintiffs failed to bring the instant action until August of 2006. The undisputed evidence shows that the latest policy at issue was issued in 1986 and Plaintiffs admit that they continued to receive premium notices in 1994, despite the promises by Schultz. Plaintiffs also admit, pursuant to Local Rule 56.1, that their suspicions as to Schultz's representations arose in the late 1980's and that they "had discussions in the late 1980's regarding what they felt . . . Schultz had promised them and how they felt that what was promised was not happening." (R SF Par. 42); *Dent*, 2003 WL 22025008, at *1 n.1; *Jankovich*, 2003 WL 260714, at *5. If, as Plaintiffs contend, Schultz "all but guaranteed" results that never occurred, no reasonable trier of fact could conclude other than that Plaintiffs should have reasonably become wise to Defendants' alleged deception long ago and no reasonable trier of fact could conclude other than that the statute of limitations period has long since run on

Plaintiffs' claims.

C.  "No-Win Situation"

Plaintiffs also contend that they continued to make certain premium payments because they "were already in a no-win situation with policies having large loans, large premiums and substantial tax liabilities if cancelled." (R SF Par. 45-46). Such an argument, however, provides no justification for failing to bring an action in a timely fashion. Plaintiffs contend that they were in that "no-win situation" as early as 1990 when Schultz sent Plaintiffs a letter telling them to pay the loan interest due on a policy. (R SF Par. 26). Plaintiffs, in arguing that they realized that they were in a "no-win situation," actually show that at that time they realized their predicament which would have triggered the running of the statute of limitations for their claims. At that point, Plaintiffs should have been aware of the alleged wrong done by Defendants and the alleged injury to Plaintiffs, and at the very least, Plaintiffs should have reasonably investigated further into the operation of the POP and into the accuracy of any representations made by Schultz.

Whether Plaintiffs decided it was wise to continue to pay premiums to prevent the cancellation of the policies is an issue entirely separate from the issue of the running of the statute of limitations. If Plaintiffs deemed it prudent to continue to pay the premiums to prevent any chance of cancellation, nothing prevented Plaintiffs from paying the premiums and simultaneously bringing an action to address

Defendants' alleged deception. Thus, Plaintiffs' argument that they were in a "no-win situation" does not offer any justification for Plaintiffs' failure to bring a timely claim and is actually an indication that Plaintiffs discovered Defendants' alleged wrongdoing and injury to Plaintiffs sooner than Plaintiffs acknowledge in their answer to the instant motion.

### D.  Continuous and Ongoing Misconduct

Plaintiffs also argue that their claims are not time-barred because "[t]he courses of action and advice by the Defendants have been continuous and ongoing up to and through the present time."  (Ans. SJ 3).  Plaintiffs provide no citation to support the statement.  (Ans. SJ 3).  The conclusory statement is completely without any evidentiary support in the record and is not sufficient to save Plaintiffs' claims at the summary judgment stage from being time-barred.  *Steen*, 486 F.3d at 1022 (stating that "summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events'")(quoting in part *Hammel,* 407 F.3d at 859).  Plaintiffs vaguely assert that NYL and Schultz to this day, while this action is proceeding, are contacting Plaintiffs and providing them with advice concerning the Policies.  According to Plaintiffs, Defendants continue to give false advice, attempting to deceive Plaintiffs despite the fact that Plaintiffs have brought the instant action seeking relief for just such alleged deception.  Nothing in

the record hints at any such facts and Plaintiffs' contention that the course of conduct

and advice from Defendants is "continuous and ongoing up to and through the

present time," can be disregarded at the summary judgment stage as a matter of law.

Fed. R. Civ. P. 56(e); (Ans. SJ 3).


E.  Operation and Risks of POP

Plaintiffs also contend that Schultz misled Plaintiffs as to the operation and

risks of the POP.  However, the undisputed evidence shows that Plaintiffs were made

aware of the facts concerning how the POP operated and any risks long ago making

their claims in the instant action untimely.  For example, Plaintiffs admit that "[t]here

is no dispute that the Defendants sent substantial amounts of paperwork to the

Plaintiffs regularly."  (Ans. SJ Mem. 3).  Plaintiffs also admit that they "received

annual premium notices and anniversary notices for each policy each year after the

policies were issued" and that the notices informed Plaintiffs of "the premiums

Plaintiffs were required to pay on the policies, the loan balances, dividend amounts

and loan interest owed."  (R SF Par. 22).  The undisputed evidence also shows that

Brown was not some unsophisticated customer of NYL that was exceptionally

vulnerable to deception in financial matters and would not understand the notices

sent to him.  It is undisputed that, during the pertinent time period, Brown was the

President and co-owner of JBB, which grossed "between $12 million and $15 million

in sales each year from the mid-1980's," and that he "has a degree in accounting and

worked as an accountant at several car dealerships." (R SF Par. 9-10).

Plaintiffs now claim that they thought the dividends were going to ultimately be utilized to pay the premiums on the policies. However, Defendants point out in paragraph 19 of their statement of facts ("Paragraph 19") that Plaintiffs knew that they were "choos[ing] to use loans rather than applying dividends to the premiums or paying the premiums in cash in order to reduce their out-of-pocket payments." (SF Par. 18). Plaintiffs deny the facts, contending that they made the choice due to "the advice, and recommendations and representations of" Schultz. (R SF Par. 19). However, the fact that Schultz may have given advice does not negate Plaintiffs' awareness of their financial decisions, the fact that they ultimately made the decisions, or the fact that they should reasonably have been aware of the potential consequences of the decisions. (R SF Par. 19). In one portion of Brown's testimony cited by Plaintiffs, Brown testified that he instructed Schultz what to do, affirmatively telling Schultz that Brown "didn't want to pay any premiums other than the absolute minimum premiums necessary. . . ." (R SF Par. 19)(Brown Dep. 45).

Thus, Plaintiffs decided to take out loans to pay the premiums. Plaintiffs also admit that each time Plaintiffs took out a new loan, NYL sent Plaintiffs a "letter to confirm that the loan had been processed, and to encourage Plaintiffs to pay off the loans as soon as possible." (R SF Par. 21). Plaintiffs admit that the letters told them the following: "'By repaying [the loan], you will be taking an important step toward restoring your policy's life insurance benefit and cash value.'" (R SF Par. 21).

14

Plaintiffs also admit that the letters also informed Plaintiffs of options for repaying the loans, "including applying future dividends toward the repayment of the loan," and "Plaintiffs did not choose this option." (R SF Par. 21). The deposition testimony of Brown and his son also show that they were aware in the 1980's that by paying the minimum amounts due on the policies that the loans on the policies would increase and interest would accumulate. (SF Par. 31-34). Plaintiffs also admit that beginning in February 1996, more than ten years before the filing of the instant action in August 2006, Plaintiffs received letters from Michael Gallo ("Gallo"), Senior Vice President of NYL, "informing them what their loan interest rate was, and including the loan balances for the policies." (R SF Par. 49); (D Ex. 15). For example, in a letter dated February 16, 1996, Gallo advised Plaintiffs that it "makes good sense to repay existing loans" and that "[l]oan repayments restore your policy's original life insurance death benefit so it can once again serve the purpose you originally intended - protection of your family, your estate or your business." (D Ex. 15). Plaintiffs also admit that in 1977 they were shown illustrations concerning how their policies would operate, and informing Plaintiffs that "dividends [were] not guaranteed." (R SF Par. 15). In addition, Plaintiffs admit that the Policies themselves indicated that the "premiums [were] payable for the insured's life," and that the Policies issued in the 1980's specifically indicate that the "'premium paying period m[ight] be shortened by using dividend values to make policies fully paid up.'" (R SF Par. 16).

The undisputed evidence shows that Plaintiffs were given warnings by NYL telling them to pay off the loans and warning them of their risks, and Plaintiffs made informed decisions to take out loans against the Policies and pay the minimum amounts due, allowing the principal to increase and paid premiums with additional loans. In light of the evidence showing the documentation and information provided to Plaintiffs by NYL since the first 1963 Policy, it is simply not sufficient for Plaintiffs, decades later, to vaguely claim they are not responsible for their own financial decisions because they thought that Schultz was taking care of everything. Based on the undisputed evidence, no reasonable trier of fact could conclude other than that any deception by Defendants or confusion by Plaintiffs should reasonably have been dispelled long ago, rendering Plaintiffs' claims in the instant action untimely.

## II.  Class Action

Defendants also argue that Plaintiffs are precluded from bringing the instant action because they were class members in a prior action, which was settled.

### A.  Local Rule 56.1 Responses to Class Action Facts

Defendants include in their statement of material facts, certain facts regarding a class action in another court. (SF Par. 56-75). In regard to a portion of those facts, Plaintiffs respond only that they "neither admit nor deny the allegations as the

Plaintiffs had no knowledge of said class action nor any discussions or communications with Mr. Schultz." (R SF Par. 56-70). Plaintiffs, in responding to Defendants' statement of material facts, are apparently taking the approach that is prescribed in Federal Rule of Civil Procedure 8(b) ("Rule 8(b)") for answering the allegations in a complaint. Rule 8(b) provides that "[a] party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial." Fed. R. Civ. P. 8(b)(5). However, Rule 8(b) is not applicable in this instance. First, we are no longer at the pleadings stage. Second, Local Rule 56.1 contains no provision providing a responding party with the option to avoid a direct response and disclaim any knowledge of the facts. LR 56.1. The parties have been given an opportunity at this juncture to conduct discovery and collect evidence to support their version of the facts.

Local Rule 56.1 requires the party asserting a fact to include a supporting citation. LR 56.1. Defendants have done so in regard to their alleged facts as to the class action, citing to the affidavits of Karen J. Lamp, a Vice President and Associate General Counsel of NYL ("Lamp Affidavit"), and Edward J. Kaminski, a Vice President of NYL ("Kaminski Affidavit"). (SF Par. 56-75). The Lamp Affidavit, Kaminski Affidavit, and their exhibits represent potential testimony and evidence that could be presented at trial to show that the facts presented by Defendants concerning the class action are true. Local Rule 56.1 requires Plaintiffs in response to either admit or deny the facts and support their response with citations to the

record.  LR 56.1.  The Local Rule is intended to ensure that parties address the factual issues in a case and clarify for the court whether there are genuinely disputed material facts.  *Waldridge*, 24 F.3d at 922 (stating that "district courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions").  Parties cannot avoid issues at the summary judgment stage with vague responses such as the response Plaintiffs provide that they neither admit nor deny the facts.  *See, e.g., id.* (indicating that the Seventh Circuit has "repeatedly upheld the strict enforcement of [Local Rules for summary judgment], sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts"); *See also Steen*, 486 F.3d at 1022 (stating that "summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'")(quoting in part *Hammel*, 407 F.3d at 859); *Jankovich*, 2003 WL 260714, at *5(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1).

Plaintiffs also respond to several of Defendants' paragraphs concerning the class action by "demand[ing] strict proof."  (R SF Par. 71-75).  Plaintiffs' response is deemed as an admission pursuant to Local Rule 56.1 since no supporting citation is

provided in the response.  LR 56.1.  In addition, despite Plaintiffs' demand for more proof, Defendants have cited to portions of the record that represent potentially admissible evidence at trial.  (SF Par. 71-75).  Neither Local Rule 56.1 nor controlling precedent requires more from Defendants at this juncture.  LR 56.1; *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007)(citing *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.,* 301 F.3d 610, 613 (7th Cir. 2002) for the rule that "the evidence relied upon in defending a motion for summary judgment must be competent evidence of a type otherwise admissible at trial").  Plaintiffs have not provided any references to the record to respond to Defendants' facts concerning the class action and Plaintiffs' conclusory responses that they do not know if the facts are true and that they demand more proof are insufficient at the summary judgment stage.  (R SF Par. 56-75).  Therefore, pursuant to Local Rule 56.1 Defendants' facts included in their statement of material facts relating to the class action are deemed to be undisputed.

### B.  Members of Class in Class Action

Defendants contend that Plaintiffs are bound by the settlement in the class action that bars any further action against Defendants.  On September 5, 1994, Irene and Robert Gillette filed an action against NYL in New York state court on behalf of a putative nationwide class ("Gillette Action").  (SF Par. 56).  The state court certified a class which was defined to "include all person or entities (1) who have or

had an ownership interest in one or more whole life or universal life insurance policies issued by [NYL] from January 1, 1982 through December 31, 1994, and (2) who did not timely request exclusion from the class." (SF Par. 62). Four of the policies at issue in the instant action, issued in 1983 and 1986 fall within that time period. (R SF Par. 14). There is no evidence that Plaintiffs initially attempted to exclude themselves from the class. A hotline was set up for the putative class members to call and ask questions about the class action and public notices were posted concerning the class action. (SF Par. 63-65). The court-appointed class action administrator also mailed to Plaintiffs the class notice and a post-settlement notice and the mail was not returned by the United States Postal Service as undelivered or undeliverable. (SF Par. 71-72). We note that Plaintiffs fall short of expressly denying in their answer or memorandum that they received such class notices or that they were aware of the Gillette Action. Instead, Plaintiffs state only that Defendants have not provided sufficient evidence that shows the facts to be true. (Ans. SJ 3); (Ans. SJ mem. 5). In response to Defendants' statement of facts, Plaintiffs state in a conclusory fashion without support that they never knew of the Gillette Action. (R SF Par. 56-71). However, Plaintiffs have failed to comply with Local Rule 56.1 in responding to the facts concerning the mailings and Plaintiffs' conclusory statements are insufficient to create a genuinely disputed fact at the summary judgment stage. Plaintiffs themselves concede that "the Plaintiff's allegations are nearly identical to those in the" Gillette Action. (Ans. SJ Mem. 5). In fact, Plaintiffs urge the court to rule in their favor based upon rulings in the Gillette

Action.  (Ans. SJ Mem. 5).  Thus, the undisputed facts clearly show that Plaintiffs were members of the class in the Gillette Action.


### C.  Exclusion From Class

The putative class members in the Gillette Action were given an opportunity to exclude themselves from the class.  (SF Par. 62-66).  Plaintiffs were mailed notice of the claims and settlement notices that included forms for electing to be excluded from the class settlement.  (SF Par. 71-72).  Plaintiffs did not submit any election forms seeking to be excluded from the proposed class by the required deadline.  (SF Par. 71-72).  Therefore, the undisputed facts show that Plaintiffs did not seek to be excluded from the class settlement in the Gillette Action and were members of the class and participants in the class settlement.


### D.  Class Settlement

Defendants contend that Plaintiffs are barred from bringing the instant action under the terms of the class settlement in the Gillette Action.  The parties in the Gillette Action entered into a settlement pursuant to a stipulation of settlement, which was approved by the state court.  (SF Par. 59, 69).  The stipulation of settlement provided that all class members agreed to release all rights to bring future actions against NYL concerning the policies at issue.  (Stip. 56-60).  In the instant action, Plaintiffs acknowledge that their claims fall within the scope of the Gillette

Action settlement.  (Ans. SJ Mem. 5).  Defendants have provided sufficient evidence

that shows that Plaintiffs were members of the putative class and did not elect to be

excluded from the class.   Plaintiffs have provided only conclusory statements

without citing to any evidentiary support, indicating vaguely that they were unaware

of the Gillette Action.  Therefore, under the terms of the settlement, Plaintiffs are

barred from bringing certain claims in the instant action.  *See Tropp v. Western-*

*Southern Life Ins. Co.*, 381 F.3d 591, 596 (7th Cir. 2004)(stating that "a release

incorporated into an order approving a class action settlement bars subsequent

litigation based on the released claims").


   E.  Pre-Settlement Period Policies

   Plaintiffs also argue that four of the policies that were issued to Plaintiffs by

NYL were prior to the class period in the Gillette Action.  Plaintiffs reference

policies issued in 1963 and 1978.  (R SF Par. 14).  Plaintiffs now assert that the

policies issued in 1963 and 1978 "were still sold under the theory that the policies

would 'POP' after the payment of premiums for a period of years."  (Ans. SJ Mem.

6).  However, Plaintiffs cite no evidence to support that conclusory statement.  (Ans.

SJ Mem. 6).  Plaintiffs fall short of even asserting that Schultz or NYL made any

misrepresentations to Plaintiffs concerning the POP in 1963 or 1978 that could be a

basis for the claims brought in the instant action.  The one sentence, unsupported

revelation introduced in Plaintiffs' memorandum that the pre-settlement period

policies may also have involved some sort of deception or confusion is in fact contrary to Plaintiffs' allegations in the amended complaint. Plaintiffs specifically allege that Defendants' alleged "scheme" of deception was initiated "on or about the early 1980's, when interest rates were at or near all time highs. . . ." (A. Compl. Par. 6). Plaintiffs have pointed to no evidence that shows deception by Defendants prior to the 1980's. Thus, the policies issued by NYL in 1963 and 1978 cannot form a basis for Plaintiffs' claims. We also note that even if Plaintiffs could show deception relating to the 1963 and 1978 policies, that would only be evidence that showed that Plaintiffs should have discovered the alleged scheme of deception earlier, possibly as early as 1971 when Plaintiffs continued to pay premiums on the 1963 policy.


### F. Claims Brought Against Schultz

Plaintiffs, recognizing that they may be bound by the Gillette Action settlement, also argue that if the court finds that they are barred from bringing claims due to the settlement, the settlement would only bar them from bringing claims against NYL and not against Schultz. (Ans. SJ Mem. 5). Defendants point out that the release in the settlement applied to claims against NYL and its agents. (Stip. 18, 56); (Sch Reply Ex. A 120). Plaintiffs acknowledge that Schultz was an agent of NYL and was acting under the guidance of NYL. (A. Compl. Par. 4, 9). The settlement agreement in the Gillette Action precludes Plaintiffs from bringing an action against Schultz. Thus, based on the above, Plaintiffs' claims are both time-

barred and are barred by the settlement agreement in the Gillette Action. Therefore, based on the above, we grant Defendants' motion for summary judgment in its entirety.


## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment in its entirety.


Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 15, 2008